UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

K.S., *et al.*,

    Plaintiffs,

        v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 12-624 (JEB)

## MEMORANDUM OPINION

Plaintiffs Dudley and Elizabeth Snee, acting on behalf of their child K.S., have brought this action challenging a hearing officer's determination that the District of Columbia Public Schools did not deny their daughter a free and appropriate education (FAPE) pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Magistrate Judge Alan Kay, having been referred the case, has issued a Report and Recommendation supporting the administrative decision. Plaintiffs have now submitted their Objections to the Report. Finding that the Report appropriately upholds the decision of the hearing officer, the Court will accept it and grant summary judgment to the District.

**I.**     **Background**

The Court will not reiterate the full factual background of the case, which is set out in detail in the 16-page Report. A brief recap here will suffice. K.S. attended Janney Elementary School, a D.C. public school, from pre-kindergarten through fourth grade. See A.R. 956 (Transcript of Due-Process Hearing). During first grade (2006-2007), she was diagnosed with a learning disability, and an Individualized Education Program (IEP) was developed whereby she was to receive special instruction in both general and special-education settings. See A.R. 50

1

(DCPS IEP, 4/30/07). DCPS developed IEPs for K.S. for second (2007-2008) and third grade (2008-2009) as well, under which she continued to receive similar services. See A.R. 71-73 (DCPS IEP, 3/6/08); A.R. 87-97 (DCPS IEP, 2/19/09). Concerned with their daughter's progress during third grade, K.S.'s parents had a neuropsychological evaluation conducted by a private psychologist in January 2009. See A.R. 975 (Transcript of Due-Process Hearing); A.R. 76-86 (January 2009 Neuropsychological Evaluation). The psychologist recommended adding specific services and instructional approaches to address K.S.'s needs. See A.R. 76-86 (January 2009 Neuropsychological Evaluation).

Based on this evaluation and the recommendations contained in the psychologist's report, K.S.'s parents sought additional services for their daughter during a planning meeting for her fourth-grade (2009-2010) IEP. DCPS, however, proposed the same services that K.S. was then receiving in third grade. See A.R. 87-97 (DCPS IEP, 2/19/09); A.R. 103-110 (DCPS IEP, 5/13/09). Despite her parents' concerns, K.S. returned to Janney for fourth grade in the fall of 2009. The Snees, nonetheless, simultaneously applied for admission to the Lab School, a private special-education school, for the next year. See A.R. 1013 (Transcript of Due-Process Hearing). In the spring of 2010, a meeting was held at Janney to plan K.S.'s fifth-grade (2010-2011) IEP. See A.R. 145-147 (Meeting Notes from 4/12/10 IEP Planning Session). The IEP was not finalized at this time, however, because the parties determined that an additional speech-and-language assessment should be conducted. See id.

Following this assessment, the parties reconvened to discuss K.S.'s IEP on June 7, 2010. DCPS proposed additional speech-and-language service hours for K.S. and further determined that she should attend Janney and did not need a full-time special-education placement at a private school. See A.R. 187-214 (DCPS IEP, 6/7/10); A.R. 215-216 (Prior Written Notice,

2

6/7/10).  Finding the District's plan inadequate, K.S.'s parents rejected the proposed IEP and the placement at Janney, informing DCPS that they were going to remove her from Janney, enroll her at the Lab School, and pursuant to IDEA, seek reimbursement for her tuition.  See A.R. 215-216 (Prior Written Notice, 6/7/10); A.R. 1022 (Transcript of Due-Process Hearing).

K.S. began her fifth-grade year at Lab in the fall of 2010, receiving services in a full-time special-education classroom.  See A.R. 235-253 (Lab School Plan for Services, 11/2/10).  In the spring, Lab updated its plan to serve K.S. in sixth grade (2011-2012).  Even though K.S. was not currently enrolled at DCPS, a copy of that plan was provided to the District, and an IEP meeting was held on June 1, 2011.  At this meeting, DCPS proposed an increase in the special-education services offered to K.S.  See A.R. 347-360 (DCPS IEP, 6/1/11).  Again, though, DCPS refused K.S.'s parents' request that she remain in a full-time special-education setting at the Lab School.  See A.R. 361-363 (Prior Written Notice, 6/7/11).  Believing that DCPS's proposed placement (at Alice Deal Middle School) could not meet their daughter's needs, they rejected the proposal and re-enrolled their daughter at Lab for the 2011-2012 school year.

Alleging a denial of FAPE from DCPS's failure to propose an appropriate program or placement for the 2010-2011 and 2011-2012 school years, K.S.'s parents filed a due-process complaint on December 9, 2011, seeking tuition reimbursement.  See A.R. 413-424 (Due Process Complaint, 12/9/11).  A three-day due-process hearing was held in February 2012, and the hearing officer issued a decision on March 3, finding that Plaintiffs had not proven that K.S. had been denied a FAPE in either year.  See A.R. 3-27 (HOD).  As a result, she was not entitled to reimbursement for tuition at the private school.  See id.

Following these administrative proceedings, Plaintiffs filed this action on April 19, 2012, and the case was subsequently referred to Magistrate Judge Kay for full case management.  Both

3

sides thereafter filed Cross-Motions for Summary Judgment. On June 10, 2013, Magistrate Judge Kay issued his Report recommending that Plaintiffs' Motion be denied and Defendant's Motion be granted. Plaintiffs timely filed their Objections to the Report on June 27, and Defendant filed its Reply on July 15.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections. The district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also Winston & Strawn LLP v. FDIC, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) (court must conduct *de novo* review of objections to magistrate judge's report and recommendation). The district court may then "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

## III.  Analysis

Plaintiffs object to the Report's recommendation that this Court uphold the decision of the hearing officer relating to 2010-2011 and 2011-2012. They claim the hearing officer erred in finding that the District's proposed IEPs for those years constituted a FAPE. As to the first year, they maintain that the hearing officer failed to consider the evidence and testimony of the parents and their experts when he determined that K.S.'s IEP was reasonably calculated to confer educational benefits under IDEA. See Obj. at 7-12. They also challenge his findings for the 2011-2012 school year on two distinct grounds. First, they argue that he erred in determining that the District was not required to provide an IEP to K.S. for that year because she was enrolled in a private school. See id. at 1-7. Second, they contend that the hearing officer erred in finding

4

that the plan DCPS did develop for K.S. was sufficient. See id. at 12-15. The Court will first set forth some of IDEA's basic principles and then address each of Plaintiffs' objections.

### A. Statutory Framework of IDEA

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982). As a condition of receiving funding under IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of students with disabilities. See 20 U.S.C. § 1413.

#### 1. Role of IEPs

In particular, school districts must develop a comprehensive plan, known as an individualized education program, for meeting the special-educational needs of each student with a disability. See § 1414(d)(2)(A). The plan is developed by the child's IEP Team, a multidisciplinary team consisting of the child's parents and teachers, as well as educational specialists, that meets and confers in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. See § 1414(d)(1)(B). The IEP must be formulated in accordance with the terms of IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." Rowley, 458 U.S. at 204. IDEA also requires that children with disabilities be placed in the "least restrictive environment" so that they can be educated in an integrated setting with children who do not have disabilities to the maximum extent appropriate. See § 1412(a)(5)(A).

The role of courts is to inquire:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Id. at 206-07 (footnotes omitted). IDEA provides a "basic floor of opportunity" for students, Rowley, 458 U.S. at 201, rather than "a potential-maximizing education." Id. at 197 n.21; see also Jenkins v. Squillacote, 935 F.2d 303, 305 (D.C. Cir. 1991) (inquiry is not whether another placement may be "more appropriate or better able to serve the child") (emphasis in original); Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P., 582 F.3d 576, 583 (5th Cir. 2009) (IDEA does not guarantee "the best possible education, nor one that will maximize the student's educational potential"; instead, it requires only that the benefit "'cannot be a mere modicum or *de minimis*; rather, an IEP must be likely to produce progress, not regression or trivial educational advancement.'") (quoting Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F., 118 F.3d 245, 248 (5th Cir. 1997)). Consistent with this framework, "[t]he question is not whether there was more that could be done, but only whether there was more that had to be done under the governing statute." Houston Indep. Sch. Dist., 582 F.3d at 590.

Courts have consistently underscored that the "appropriateness of an IEP is not a question of whether it will guarantee educational benefits, but rather whether it is reasonably calculated to do so"; thus, "the court judges the IEP prospectively and looks to the IEP's goals and methodology at the time of its implementation." Report at 11 (citing Thompson R2-J Sch. Dist. v. Luke P. ex rel. Jeff P., 540 F.3d 1143, 1148-49 (10th Cir. 2008)). Academic progress under a prior plan may be relevant in determining the appropriateness of a challenged IEP. See Roark ex

rel. Roark v. Dist. of Columbia, 460 F. Supp. 2d 32, 44 (D.D.C. 2006) ("Academic success is an important factor 'in determining whether an IEP is reasonably calculated to provide education benefits.'") (quoting Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 (6th Cir. 2003)); Hunter v. Dist. of Columbia, No. 07-695, 2008 WL 4307492, at *9 (D.D.C. Sept. 17, 2008) (citing cases with same holding).

When assessing a student's progress, courts should defer to the administrative agency's expertise. See Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 195 (2d Cir. 2005) ("Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when assessing an IEP's substantive adequacy."). This deference, however, does not dictate that the administrative agency is always correct. See Cnty. Sch. Bd. of Henrico Cnty., Virginia v. Z.P. ex rel. R.P., 399 F.3d 298, 307 (4th Cir. 2005) ("Nor does the required deference to the opinions of the professional educators somehow relieve the hearing officer or the district court of the obligation to determine as a factual matter whether a given IEP is appropriate. That is, the fact-finder is not required to conclude that an IEP is appropriate simply because a teacher or other professional testifies that the IEP is appropriate. . . . The IDEA gives parents the right to challenge the appropriateness of a proposed IEP, and courts hearing IDEA challenges are required to determine independently whether a proposed IEP is reasonably calculated to enable the child to receive educational benefits.") (internal citations omitted).

An IEP, nevertheless, need not conform to a parent's wishes in order to be sufficient or appropriate. See Shaw v. Dist. of Columbia, 238 F. Supp. 2d 127, 139 (D.D.C. 2002) (IDEA does not provide for an "education . . . designed according to the parent's desires") (citation omitted). While parents may desire "more services and more individualized attention," when the

7

IEP meets the requirements discussed above, such additions are not required. See, e.g., Aaron P. v. Dep't of Educ., Hawaii, No. 10-574, 2011 WL 5320994, at *32 (D. Hawaii Oct. 31, 2011) (while "sympathetic" to parents' frustration that child had not progressed in public school "as much as they wanted her to," court noted that "the role of the district court in IDEA appeals is not to determine whether an educational agency offered the best services available"); see also D.S. v. Hawaii, No. 11-161, 2011 WL 6819060, at *10 (D. Hawaii Dec. 27, 2011) ("[T]hroughout the proceedings, Mother has sought, as all good parents do, to secure the best services for her child. The role of the district court in IDEA appeals, however, is not to determine whether an educational agency offered the best services, but whether the services offered confer the child with a meaningful benefit.").

### 2. *Reimbursement for Private School Placement*

In implementing the IEP, "[i]f no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted). However, "if there is an 'appropriate' public school program available . . . the District need not consider private placement, even though a private school might be more appropriate or better able to serve the child." Jenkins, 935 F.2d at 305 (emphasis in original); see also A.E. ex rel. Mr. and Mrs. E. v. Westport Bd. of Educ., 463 F. Supp. 2d 208, 221 (D. Conn. 2006) (IDEA "does not require a school district to pay for a private school education simply because that opportunity would be ideal for the student. It requires only that a school board provide each student a FAPE, that is, a basic opportunity to receive an educational benefit. Because [the student] would have received that basic opportunity . . . , the Board is not required to reimburse the parents for the cost of what may have been an even better educational opportunity for [the student].").

8

Finally, "parents are not required to wait and see a proposed IEP in action before concluding that it is inadequate and choosing to enroll their child in an appropriate private school." N.S. ex rel. Stein v. Dist. of Columbia, 709 F. Supp. 2d 57, 72 (D.D.C. 2010) (citing Forest Grove Sch. Dist. v. T.A., 557 U.S. 230 (2009)). Parents who unilaterally place their child in a private school without the agreement of the school district, however, "do so at their own risk, and are entitled to reimbursement only if a court concludes that the placement approved by the school officials violates the IDEA and that the private school placement is proper under the IDEA." Roark, 460 F. Supp. 2d at 45.

### 3. *Procedural Posture of Case*

Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due-process hearing, see §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." § 1415(h). In the District, a qualified, impartial hearing officer conducts the due-process hearing in accordance with the Act. See 5-E D.C. Mun. Regs. § 3030. Parents "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. See § 1415(i)(2); 5-E D.C. Mun. Regs. § 3031.5. The district court has remedial authority under the Act and broad discretion to grant "such relief as the court determines is appropriate." § 1415(i)(2)(C)(iii).

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The reviewing court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). In a review of a Hearing Officer

Decision (HOD), the burden of proof is always on the party challenging the administrative determination, who "'must at least take on the burden of persuading the court that the hearing officer was wrong.'" Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989)).

The Supreme Court has held that IDEA's preponderance-of-the-evidence standard of review does not authorize unfettered *de novo* review. See Rowley, 458 U.S. at 206 ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Courts must give administrative proceedings "due weight," id., and "'[f]actual findings from the administrative proceedings are to be considered prima facie correct.'" Roark, 460 F. Supp. 2d at 38 (quoting S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). The statute, however, also suggests "less deference than is conventional in administrative proceedings," Reid, 401 F.3d at 521 (internal quotation marks omitted), since the district court is allowed to hear additional evidence at the request of a party. See § 1415(i)(2)(C)(ii). When no additional evidence is introduced in a civil suit seeking review of a HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. Dist. of Columbia v. Ramirez, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

B.  2010-2011 School Year

As noted above, the first school year at issue here is K.S.'s fifth-grade year, 2010-2011. During the planning process for that year, while K.S. was still in fourth grade at Janney, her parents sought additional services based on a recent speech-and-language assessment that had been conducted by a private psychologist. See A.R. 153-174 (Speech and Language

Assessment, 5/19/10); A.R. 215-216 (Prior Written Notice, 6/7/10). DCPS did authorize some additional services; however, it maintained that K.S. should remain at Janney and did not need a full-time special-education placement. See A.R. 187-214 (DCPS IEP, 6/7/10); A.R. 215-216 (Prior Written Notice, 6/7/10). Finding the District's proposed IEP inadequate, K.S.'s parents rejected the plan and informed DCPS that they were going to enroll their daughter at the Lab School and seek reimbursement for her tuition. See A.R. 215-216 (Prior Written Notice, 6/7/10); A.R. 1022 (Transcript of Due-Process Hearing).

Plaintiffs now contend that the hearing officer – and, subsequently, the Magistrate Judge – erred in finding that K.S. had been provided with a FAPE even though the District refused to offer her a full-time special-education placement. Specifically, they argue that the hearing officer "engaged in an extreme departure from the regular fact-finding process" by ignoring the extensive evidence presented by the parents at the hearing as to their daughter's needs and the IEP's inability to address those needs. See Obj. at 8, 9-12; see also Pls.' Mot. for Summary Judgment at 15-31. The Court disagrees.

Plaintiffs discuss at length the specific testimony and documentary evidence presented at the due-process hearing in support of their argument that K.S. had not made sufficient progress while attending Janney and thus was denied a FAPE when private placement was rejected. See Obj. at 7-12. For example, they contend that the hearing officer:

- Ignored evidence from Lab staff that K.S.'s assessed instructional levels were at the same level as they were a year earlier at Janney Elementary, see Obj. at 8 (citing A.R. 322-23 (Lab School Plan for Services, 5/19/11); A.R. 123 (Teacher Evaluation, 12/18/09));

- "[D]iscounted the objective deficits in performance and scores as recorded in the December, 2009 DCPS teacher reports on K.S.'s instructional levels," Obj. at 9; and

- "[C]ompletely ignored" Plaintiffs' expert testimony, including that of

11

- o James Ross, K.S.'s speech and language pathologist at Lab, who was qualified as an expert and discussed K.S.'s significant speech and language needs and the challenges of serving those needs in a larger mainstream class, see Obj. at 10 (citing A.R. 874, 877, 885-87 (Transcript of Due-Process Hearing));

- o Christine Chang, an expert in occupational therapy services, who testified that K.S.'s classroom needs to have Occupational Therapy for her to be successful, see Obj. at 10-11 (citing A.R. 923, 938, 941 (Transcript of Due-Process Hearing)); and

- o Karen Duncan, Director of Education at Lab, who testified regarding K.S.'s needs and the necessity that she be educated in a full-time special education program.

See Obj. at 11.

Defendant responds that the hearing officer adequately considered that evidence and correctly determined that K.S. had in fact made progress under her previous IEP. See Reply at 10-12. Her progress, it contends, was demonstrated through:

- Test scores indicating she was making progress in reading, written language, oral language, and math;

- Test scores showing that she was reading at a 4.2 grade equivalency with 94% accuracy;

- Individual teacher comments on her report card (and teacher testimony) indicating she made progress; and

- Reports documenting K.S.'s progress toward goals in her IEP.

See Reply at 12 (citing Report at 12-13). Defendant, moreover, maintains that the hearing officer did not "ignore" the parents' evidence, but carefully weighed it and explained why certain evidence was not persuasive. The District notes that

- Two-thirds of the 39 factual findings reference the testimony or records provided by Plaintiffs, see Reply at 10 (citing A.R. 4-14 (HOD));

12

- The hearing officer found the testimony of Plaintiffs' witness Ms. Mounce unconvincing and instead credited the testimony of K.S.'s teachers at Janney Elementary, see id. at 11; and

- The hearing officer correctly disregarded the Lab School's informal assessments because they employed different standards and there was no way to compare them to previous assessments.

See id.

      The Court believes the Report correctly upheld the hearing officer's determination that K.S. had been offered a FAPE for the 2010-2011 school year. See Report at 13. Consistent with IDEA's requirements, DCPS constructed an individualized program tailored to meet K.S.'s educational needs. See Hailey M. ex rel. Melinda B. v. Matayoshi, No. 10-733, 2011 WL 3957206, at *26 (D. Hawaii Sept. 7, 2011) (finding student had been offered a FAPE in compliance with IDEA even though "parties appear[ed] divided by honest differences of opinion" with respect to services student should receive). In crafting its plan to serve K.S., DCPS offered to provide "sufficient support services to permit the child to benefit educationally from that instruction," Rowley, 458 U.S. at 203, including reading, writing, mathematics, and speech-pathology services in both general-educational and special-educational settings. See A.R. 187-214 (DCPS IEP, 6/7/10). This plan, moreover, was a result of ongoing efforts to assess K.S.'s needs and ensure that those needs were being met, including a speech-and-language assessment that was incorporated into K.S.'s IEP for the year. See A.R. 145-46 (MDT Meeting Notes, 6/7/10); A.R. 168 (Speech Assessment). The hearing officer also appropriately considered IDEA's and the District's requirement that K.S. be educated in the "least restrictive environment." See Report at 12 (citing 20 U.S.C. § 1412(a)(5)); see also 5-E D.C. Mun. Regs. § 3011.1.

While the Report acknowledged that the services sought by K.S.'s parents may have more comprehensively served K.S., it correctly observed that the "'Cadillac' of educational treatment" is not required by IDEA. See Report at 12, 13. Instead, the Report looked to whether K.S. would have received some educational benefit in the general-education setting (even if her potential may not have been maximized). It found evidence of such a benefit, including:

- K.S.'s scores on the WJ-III standardized test and the F&P reading test that showed she was making progress, see id.;

- Testimony from K.S.'s fourth-grade teachers regarding her progress, see id.;

- K.S.'s progress on IEP goals, even if she had only mastered two of nine goals, see id.; and

- Testimony from K.S.'s teacher at Janney that she was well socialized and had a happy disposition.

See id. at 12-13. The Report further appropriately noted that "[w]here evidence of educational appropriateness is mixed, and a court bases its ruling on same record as before the hearing officer," courts should defer to the hearing officer. See id. at 13 (quoting Schoenbach v. Dist. of Columbia, 309 F. Supp. 2d 71, 82 (D.D.C. 2004)).

Finally, while Plaintiffs contend that the hearing officer's failure to explain why he was discounting the testimony of their experts merits remand, the Court cannot concur. Because he otherwise provided substantial justification for his determination that K.S. was receiving sufficient educational benefit at Janney, no remand for further elaboration is warranted.

As the Court finds that K.S. was offered sufficient educational benefit under the District's proposed IEP, she was not denied a FAPE for 2010-11, and Plaintiffs are thus not entitled to reimbursement for K.S.'s fifth-grade private-school placement.

14

C. 2011-2012 School Year

On March 18, 2011, while K.S. was enrolled at the Lab School, DCPS volunteered to review the previous year's IEP (which K.S.'s parents had rejected) and develop a new plan. See A.R. 274 (DCPS Letter) ("Last spring, DCPS developed an IEP for [K.S.] prior to her withdrawal from DCPS. That IEP will expire on June 6 of this year. If you would like DCPS to conduct an annual review of [K.S.'s] current IEP and develop a new IEP for the 2011-2012 school year, we would like to complete this process while her current educational instructors and related services providers are available."). On June 1, 2011, the IEP meeting was convened and included K.S.'s parents, numerous individuals from the Lab School, and representatives from DCPS. See A.R. 347-360 (DCPS IEP, 6/1/11). Prior to this meeting, the Lab School had developed its own service plan for the next school year requiring full-time special education, which K.S.'s mother had signed. See A.R. 314-324 (Lab School Plan for Services, 5/19/11); see also A.R. 325-343 (Student Goals & Objectives). These documents were shared with DCPS in advance of the June 1 meeting, and DCPS incorporated the Goals and Objectives from the Lab School plan into its proposed IEP. See A.R. 344 (Letter to DCPS enclosing Lab School plan); A.R. 347-360 (DCPS IEP, 6/1/11).

Table A identifies the services in the proposed IEP, compared to the services that K.S. had been offered (and refused) in the previous school year.

| Table A: Hours of Services / Week | | | |
|---|---|---|---|
| Service | Setting | 2010-2011 6/7/10 IEP (A.R. 197) | 2011-2012 6/1/11 IEP (A.R. 357) |
| **Outside General Education** | | | |
| Reading | Outside General Education | 1 hr | 2 hr |
| Written Expression | Outside General Education | .5 hr | 1 hr |
| Speech-Language Pathology | Outside General Education | .75 hr | .75 hr |
| Total | | **2 hr 15 mins** | **3 hr 45 mins** |
| **General Education** | | | |
| Reading | General Education | 1 hr | 2 hr |
| Written Expression | General Education | 1 hr | 2 hr |
| Mathematics | General Education | 2 hr | 2 hr |
| Speech-Language Pathology | General Education | .75 hr | .75 hr |
| Total | | **4 hr 45 mins** | **6 hr 45 mins** |
| **Other** | | | |
| Consultation Services: Speech-Language Pathology | n/a | .5 hr | .5 hr |

While the proposed IEP increased services K.S. would receive both inside and outside of the general-education setting, it did not include full-time special education. See A.R. 314-324 (Lab School Plan for Services, 5/19/11); A.R. 347-360 (DCPS IEP, 6/1/11). In other words, the District recommended that K.S. enroll at Alice Deal Middle School (since Janney ends after fifth grade), not remain at Lab. As with the previous year's IEP, K.S.'s parents refused the District's plan and kept her at Lab. See A.R. 413-424 (Due Process Complaint, 12/9/11).

Plaintiffs raise two challenges to the Report's recommendation to affirm the hearing officer's decisions as to the 2011-2012 school year. First, they charge that he erred in concluding that the District was not required to develop an IEP for parentally placed private-school children like K.S. Second, Plaintiffs complain of his alternative finding that the District had nonetheless developed an IEP that was reasonably calculated to provide K.S. with sufficient educational benefit. See A.R. 24-25 (HOD). Magistrate Judge Kay affirmed both findings. See Report at 13-14. Because the Court finds an appropriate IEP was in fact developed by DCPS, it need not resolve the threshold issue of whether DCPS was required to create one.

Plaintiffs are correct in noting that the hearing officer's discussion of the appropriateness of this IEP is extremely limited: "I find that DCPS' June 1, 2011 IEP did not violate the IDEA. As with DCPS' proposed June 7, 2010 IEP, the June 1, 2011 IEP continued all of the services provided to student in the successful May 13, 2009 IEP." A.R. 25 (HOD). After noting that K.S.'s services were being increased under the proposed IEP, the hearing officer concluded that "Petitioners have not shown that this level of Specialized Instruction and Related Services was not reasonably calculated to provide some educational benefit to Student." Id.

Such a cursory discussion, Plaintiffs contend, fails to recognize that "a student's educational needs may change from year to year," and "parents should be allowed to present, and a Court or Hearing Officer must consider, evidence of a student's differing need from one year to the next when crafting appropriate relief." Obj. at 14. While this may well be true, Plaintiffs never provided any evidence of a significant change in K.S.'s needs. Instead, they rest their challenge on the same argument they made with respect to the previous year: that K.S.'s needs could only be met in a full-time special-education setting. Id. at 15. By doubling down on the identical argument – an argument that this Court has rejected, see Section III.B, *supra* – and failing to demonstrate any material change in K.S.'s needs for the 2011-2012 school year, Plaintiffs have failed to carry their burden on this point. They cannot show the hearing officer erred in finding DCPS could meet her needs at Deal. Had the Court found that the previous year's plan was inappropriate – or that K.S.'s needs had grown – then it might well follow that the plan for the second year, which proposed similar services, would also be inadequate. That is not the case, however.

The new plan, moreover, did not simply repeat the previous IEP, but instead offered substantial increases in services. See Table A, *supra*. As with the 2010-2011 year, DCPS

17

endeavored to provide K.S. with some educational benefit for the 2011-2012 school year: it convened an IEP meeting, incorporated Goals and Objectives from the Lab School's plan, and developed a reasonable service plan to aid K.S. in attaining those goals. See A.R. 14 (HOD). The Court concludes that the proposed IEP was sufficient. Plaintiffs, therefore, are not entitled to reimbursement for K.S.'s sixth-grade tuition at the Lab School either.

## IV. Conclusion

For the reasons stated herein, the Court will issue a contemporaneous Order adopting Magistrate Kay's June 10, 2013, Report and Recommendation denying Plaintiffs' Motion and granting Defendant's.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 26, 2013